VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-280

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2026

State of Vermont v. Terrell Jackson*

```
}   APPEALED FROM:
}   Superior Court, Rutland Unit,
}   Criminal Division
}   CASE NO. 24-CR-03863
    Trial Judge: Cortland Corsones
```

In the above-entitled cause, the Clerk will enter:

Defendant was convicted of grand larceny and careless or negligent operation of a motor vehicle following a jury trial.  He argues that the State failed to prove he possessed the necessary intent for grand larceny and that the trial court should have sua sponte granted him a judgment of acquittal.  We affirm.

The State presented the following evidence at trial.  On Friday April 12, 2024, the owner of a jewelry store, who had just returned from vacation, put out a display of various engagement rings.  No one had looked at the rings previously; they had been "locked inside the showcase . . . with [price] tags."  Defendant visited the store that day to look at engagement rings.  He had been there previously but had never purchased anything.  The owner showed defendant some engagement rings.  Defendant was interested in two rings: a single-piece engagement ring and an engagement ring and wedding band set.  The owner testified that the value of the set was $3000 and it was priced at $2999.  Defendant had a video chat with his girlfriend to "show[] her the rings."  While he did so, the owner "stepped over to [the] checkout counter" to give defendant "some space."

Defendant did not buy any jewelry that day.  He told the owner that he was going to call his cousin and that "if she approved of the ring, he would be back in to buy it."  Defendant said his cousin was outside, but defendant did not return to the store.  The owner put the rings away and, at that time, he did not notice anything unusual.  No one else looked at engagement rings that day.

The following morning, the owner noticed something amiss with the engagement set that defendant viewed.  The ring had a large tag that did not fit in the display case.  When the owner

looked at it, the ring said "Made in Thailand" with a price of $68. It was not the owner's ring. The owner called the police and reviewed his security camera footage. In the video footage, the owner observed defendant engage in a sleight of hand to replace the owner's ring with an identical-looking copy. He described defendant pulling out the owner's ring, letting it slide down his sleeve, and then using his other hand to place a different ring back in the display. Defendant then struggled to fit the new ring back into the display given its oversized tag. The security footage was admitted into evidence.

That same day, the owner contacted other local jewelry stores and learned that defendant had also visited those stores, looking at engagement rings. The owner discovered defendant's name through another owner, which differed from the name defendant gave him. Later that day, defendant's car was seen at a local restaurant. The owner and police responded. The owner identified defendant and defendant's car. The police stopped defendant's vehicle and confirmed that defendant matched the description provided by the owner. When the officer informed defendant that he "matched the description of somebody involved in a retail theft" defendant said "oh, f*ck that," and "sped off" at "a high rate of speed." Defendant drove through several stop signs. The police did not stop defendant at that time and located him later that day.

The owner's store was closed on Sunday. When the owner arrived at work on Monday morning, he found a bag inside his security gate that contained the missing ring. The owner reviewed security camera footage, which showed defendant returning the ring on Sunday.

Defendant did not present any evidence at trial and did not move for a judgment of acquittal. Defense counsel, in his opening and closing arguments, asserted that defendant took the ring by mistake. The jury found defendant guilty. This appeal followed.

Defendant argues that there was insufficient evidence to establish his guilt of grand larceny in violation of 13 V.S.A. § 2501. Section 2501 makes it a crime to "steal[] from the actual or constructive possession of another, other than from his or her person," various things, including "goods." "Stealing has been defined at common law, and identified in our case law, as . . . the taking and removal, by trespass, of personal property, which the trespasser knows to belong to another, with the felonious intent to deprive him of his ownership therein." State v. Hanson, 141 Vt. 228, 231 (1982) (quotation and brackets omitted). "This larcenous intent has in turn been further defined . . . as an intent to take and keep property of another wrongfully, so that the trespasser may appropriate it for his own purposes." Id. at 232 (quotation omitted). Stated otherwise, a defendant must intend "to permanently separate the owner from his property, or at least deliberately act so as to make it unlikely that the owner and his property would be reunited." Id.

Defendant maintains that he did not intend to deprive the owner of his ring. He contends that he mistakenly left with the wrong ring and then returned the ring when he learned the police were looking for it. Defendant likens this case to State v. Levy, 113 Vt. 459 (1944), where a defendant was acquitted of larceny after taking the wrong coat from a restaurant. Citing Levy, defendant asserts that because the State relied on circumstantial evidence, the evidence "must be so cogent as to exclude every reasonable hypothesis consistent with the [defendant's] innocence." Id. at 461. According to defendant, the evidence in this case raised "only a suspicion of guilt." Id. at 461-62. Defendant further asserts that the State's reliance on circumstantial evidence is "dangerous" because his decision to flee from the police had little

2

probative value and defense counsel posited during closing that it might have been "a little bit scary" for a person who looked like defendant to be stopped by police.[*] Defendant acknowledges that he failed to preserve his arguments below. He maintains that the court committed plain error by failing to grant a judgment of acquittal sua sponte.

These arguments are unpersuasive. Establishing plain error presents a "very high bar." State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292. "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Kuhlmann, 2021 VT 52, ¶ 26, 215 Vt. 290 (quotation omitted). A defendant must show "that there is an error, the error is obvious, and the error affects substantial rights and results in prejudice to defendant." Id. In addition to the plain-error standard, we are also mindful of "the standard applied to claims that the trial court erred by failing to sua sponte move for acquittal on its own motion." Id. ¶ 27. A "court should move for acquittal only when the record reveals that the evidence is so tenuous that a conviction would be unconscionable." Id. (quotations omitted).

Defendant fails to satisfy these standards here. It is well established that the State may "rely exclusively on circumstantial evidence in proving its case." State v. O'Neill, 2019 VT 19, ¶ 35, 209 Vt. 599. We have repeatedly made clear since Levy that "[t]he sufficiency of circumstantial evidence to support a conviction is measured against the same standard as all other evidence: it will sustain a conviction if sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Warner, 151 Vt. 469, 472 (1989). "[T]he State is not required to exclude every reasonable hypothesis of innocence in proving a case with circumstantial evidence." Id. We recognize, moreover, that "[i]ntent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." State v. Dow, 2016 VT 91, ¶ 8, 202 Vt. 616 (quotation omitted). It is the exclusive role of the jury to assess "the credibility of the witnesses and the weight of the evidence." Hinchliffe, 2009 VT 111, ¶ 22.

Mindful of these standards, the evidence here showed that defendant had visited the owner's jewelry store on several occasions. He provided a false name to the owner. He did not tell the owner that he brought a ring with him into the store and was looking for something similar. The surveillance video showed defendant switching the rings in a nonobvious way and struggling to fit his own ring into the display box. He fled from police when they told him he was a suspect in a retail theft, which was a proper subject for the jury's consideration. State v. Murphy, 2023 VT 8, ¶ 22, 217 Vt. 578 (recognizing that while "flight evidence" alone is insufficient to support guilty verdict, such evidence "may be properly admitted and relied upon by a jury as circumstantial evidence of guilt" (quotation omitted)). Defendant returned the ring when no one was at the store, after he learned that the theft had been discovered. While defendant contends that he had no intent to take and keep the ring, the jury reasonably concluded

---

[*] Defendant also cites to his own testimony from sentencing regarding his encounters with the police. That testimony is irrelevant to the question of whether there was sufficient evidence presented at trial to support the grand larceny conviction and we do not consider it. See, e.g., State v. Hinchliffe, 2009 VT 111, ¶ 17, 186 Vt. 487 (recognizing that Court considers "motion for acquittal based solely on the evidence submitted by the State at trial").

otherwise.  The evidence here was not "so tenuous that a conviction would be unconscionable," Kuhlmann, 2021 VT 52, ¶ 27 (quotation omitted), and there was no plain error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Michael P. Drescher, Associate Justice